UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KELVIN WASHINGTON, | : | |
| | : | |
| Petitioner, | : | Civil Action No. 12-1184 (MAS) |
| | : | |
| v. | : | OPINION |
| | : | |
| CHARLES WARREN, et. al., | : | |
| | : | |
| Respondents. | : | |

APPEARANCES:

KELVIN WASHINGTON, Pro Se Petitioner
#513538/608936-A
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

MONICA L. DO OUTEIRO, ESQ.
MONMOUTH COUNTY PROSECUTOR'S OFFICE
132 Jerseyville Avenue
Freehold, New Jersey 07728
Counsel for Respondents

SHIPP, District Judge

Petitioner Kelvin Washington ("Petitioner") challenges his 2005 New Jersey state court judgment of conviction in this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the petition will be denied for lack of merit.

# I. BACKGROUND

## A. Procedural History

On October 10, 2002, Petitioner was indicted by a Monmouth County Grand Jury, under a five count Indictment, No. 02-10-1997, on charges of first degree armed robbery, possession of a weapon for an unlawful purpose, unlawful possession of a weapon, resisting arrest, eluding, and a fourth degree offense of certain persons not to have a weapon.  The last charge was severed for trial.  (ECF No. 15-34, Ra31[1] – Defendant's Brief on PCR Appeal at 1.)

Before trial, Petitioner filed numerous motions for (a) production of grand jury voting, attendance and racial composition, (b) dismissal of the indictment, (c) to compel a physical line-up, (d) dismissal of counsel, (e) admission of defensive N.J.R.E. 404(b) evidence, (f) reconsideration, and (g) a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967).  The pretrial motions were denied, except the motion to compel a physical line-up,[2] and the *Wade* hearing.  (Ra31 at 2.)

The *Wade* hearing was conducted on October 26, 2004, before the Honorable Bette E. Uhrmacher, J.S.C.  Judge Uhrmacher ruled that the robbery victim's identification of Petitioner could be admitted at trial.  (Ra9 - Oct. 26, 2004 Trial Transcript ("9T") at  90:1-9.)  A jury trial thereafter commenced on October 27, 2004, with Judge Uhrmacher presiding, and continuing on October 28, 2004 and November 3, 2004.  On November 3, 2004, the jury returned a verdict of guilty on all five counts of the Indictment, and then returned a guilty verdict on Count Six of the Indictment, which was tried separately that same day.  (Ra12 – Nov. 3, 2004 Trial Transcript ("12T") at 152:1-154:4 and 164:1-4.)

---

[1] Respondents attached an appendix of the relevant state court record, hereinafter designated as "Ra", with a list identifying the exhibits numbered 1 through 38, which this Court refers to as "Ra1" through "Ra38."  The list of exhibits is docketed at ECF No. 15-3.

[2] The line-up never occurred because Petitioner changed his mind and declined to participate. (4T 22:2-26:23.)

On February 9, 2005, Judge Uhrmacher denied Petitioner's motion for a new trial, and granted the State's motion for a mandatory extended term sentence. Judge Uhrmacher then sentenced Petitioner to an aggregate term of fifty years in prison, subject to N.J.S.A. 2C:43-7.1b of the No Early Release Act ("NERA"). (Ra13 – Feb. 9, 2005 Motion and Sentencing Transcript or "13T" at 43:1-44:9.)

On or about June 27, 2005, Petitioner filed a direct appeal from his conviction and sentence before the Superior Court of New Jersey, Appellate Division. The Appellate Division affirmed the conviction and sentence in a *per curiam* decision rendered on April 16, 2008. *State v. Washington*, 2008 WL 1733661 (N.J. Super. A.D. Apr. 16, 2008). (*See also* Ra19 - *State v. Washington*, Docket No. A-5669-04T4.) Petitioner filed a Notice of Petition for Certification, (Ra20), and on June 17, 2008, the Supreme Court of New Jersey remanded the matter to the sentencing court to provide a more specific statement of reasons for the imposition of an extended term sentence. (Ra24.) Petitioner was resentenced on June 24, 2008, in accordance with the New Jersey Supreme Court's instruction, and a judgment of conviction was entered that same date. (Ra23.) The New Jersey Supreme Court then denied certification on September 24, 2008. *State v. Washington*, 196 N.J. 467 (2008). (Ra24.)

Thereafter, on October 20, 2008, Petitioner filed a petition for post-conviction relief ("PCR") in state court asserting claims of ineffective assistance of counsel, which was later supplemented by counsel and *pro se* amendments. The Honorable Ronald Lee Reisner, J.S.C., held oral argument on August 28, 2009, and denied the PCR petition that same day. (Ra14 – Aug. 28, 2009 PCR Transcript ("14T") at 23:22-27:18; Ra29 – Aug. 28, 2009 Order.) Petitioner

appealed from Judge Reisner's decision,[3] and the Appellate Division affirmed the ruling in an unpublished opinion filed on April 26, 2011. *State v. Washington*, 2011 WL 1543348 (N.J. Super. A.D. Apr. 26, 2011). (Ra34.) The Supreme Court of New Jersey denied certification on November 4, 2011. *State v. Washington*, 208 N.J. 382 (2011). (Ra36.)

On February 17, 2012, Petitioner filed this habeas petition pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Petitioner supplemented his initial habeas petition on June 29, 2012 (ECF No. 5), July 2, 2012 (ECF No. 6), August 9, 2012 (ECF Nos. 9, 10), and August 13, 2012 (ECF No. 11).

On April 26, 2013, the State filed a response to the petition. (ECF No. 15.) The State provided the relevant state court record as its appendix, which is docketed at ECF Nos. 15-4 through 15-41. A list identifying the state court record is docketed at ECF No. 15-3. No traverse or reply brief was filed by Petitioner.

B. Statement of Facts

This Court, affording the state court's factual determinations the appropriate deference, *see* 28 U.S.C. § 2254(e)(1), will simply reproduce the recitation as set forth in the April 16, 2008 opinion of the New Jersey Appellate Division as to Petitioner's direct appeal:

> On August 10, 2002, Septin Ayyildiz was working the nighttime shift at a gas station located at the intersection of Monmouth Road and Cedar Avenue, West Long Branch. At approximately 2:20 a.m., a gold-colored motor vehicle entered the gas station and pulled up near the attendant's booth in which Ayyildiz was sitting. The driver, later identified as defendant, exited the motor vehicle and approached the booth, requesting a pack of cigarettes from Ayyildiz. After Ayyildiz complied, defendant asked for a second pack. As Ayyildiz turned his head to retrieve the cigarettes, he felt an object pressed against the left side of his stomach. Ayyildiz observed that the object was a knife, approximately five to six-inches in length.
>
> Defendant demanded that Ayyildiz give him the money from the cash register in the booth. After Ayyildiz complied, defendant returned to his vehicle and drove out of the

---

[3] It appears that Petitioner filed a second PCR petition in early 2010, while his first state PCR petition was pending on appeal. This second PCR petition was dismissed on April 27, 2010. (Ra38.)

gas station with the tires of the car screeching. As the vehicle left the gas station, it was observed by Sergeant Lawrence Mihlon of the West Long Branch Police Department. Mihlon intended to stop the vehicle and issue a summons for careless driving, but first drove slowly past the gas station to ascertain whether the attendant was all right. Ayyildiz informed Mihlon that he had just been robbed by the driver of the gold vehicle.

Mihlon proceeded to follow defendant's vehicle onto Cedar Avenue, activating his patrol vehicle's overhead lights and siren. Defendant did not stop, and a high-speed chase ensued eastbound onto Ocean Boulevard. After Mihlon turned onto Ocean Boulevard, he observed that defendant had crashed his vehicle and had fled the scene. Paper money was strewn about the street near the crash site.

*2 After other officers responded to the area, the police searched the crash site attempting to locate defendant. Responding to a pedestrian's tip, the officers proceeded to the beach, where they observed defendant treading water approximately fifty feet offshore. After defendant came back near the shoreline, the police placed him under arrest and took him to Monmouth Medical Center.

In the interim, Ayyildiz and the manager of the gas station had responded to the West Long Branch Police Department to formally report the robbery. Ayyildiz informed Detective Paul Habermann, that he had been robbed by a black male. At Habermann's request, Ayyildiz accompanied him to the Monmouth Medical Center, where Ayyildiz identified defendant as the person who had robbed him. After Ayyildiz identified defendant, Ayyildiz was driven by Habermann to the accident site, where he also identified defendant's vehicle.

At trial, defendant testified that he did not commit the robbery, stating that he had loaned his automobile to an acquaintance known as "Rasheem." While defendant was waiting for Rasheem to return for him on Ocean Boulevard, he heard sirens and saw his car crash into some bushes. Believing that he would get in trouble because his license was suspended, defendant ran and hid among jetty rocks on the beach. After he was discovered, he ran into the ocean, but was later placed under arrest. Concerning Ayyildiz's identification, defendant stated that Rasheem looked like him and that could have accounted for the misidentification.

*State v. Washington*, 2008 WL 1733661 (N.J. Super. A.D. Apr. 16, 2008).  (*See also* ECF No. 15-22, Ra19 - *State v. Washington*, Docket No. A-5669-04T4, slip op. at 3-5.)

## II.  STATEMENT OF CLAIMS

Petitioner raises the following claims for habeas relief:

Ground One:  "The admission into evidence of the testimony concerning the inherently unreliable out-of-court identification, obtained pursuant to a showup, deprived Defendant of his rights under the state and federal constitutions."

Ground Two:  "The trial judge erred in denying the defense request to admit evidence of a similar robbery committed while the Defendant was in jail.  Such evidence was admissible on the theory of third-party guilt."

Ground Three:  "Defendant received ineffective assistance of trial counsel, when his attorney failed to introduce into evidence a photograph of "Rasheem" to show the jury the numerous physical similarities that existed between the two men."

Ground Four:  "Defendant received ineffective assistance of trial counsel, when his attorney failed to fully investigate the evidence of the car that was recovered at the scene and in preventing the State in returning the evidence [the car] to the dealership."

Ground Five:  "The trial court's charge to the jury was inadequate and misleading in several respects," such as failure to provide an instruction on identification, failure to instruct the jury on evaluating police testimony, and failure to mold the jury instructions to the facts of the case and include an instruction on cross-racial identification.

Ground Six:  "Petitioner received ineffective assistance of appellate counsel when the issue of the verdict being against the weight of the evidence was not raised on direct appeal."

Ground Seven:  "Trial counsel failed to make reasonable investigations."

Ground Eight: "Petitioner's sentence was manifestly excessive and the imposition of an extended term [pursuant to N.J.S.A. 2C:43-7.1b and The No Early Release Act] was unjustly harsh and illegal."

(ECF No. 1 – Petition at 5-16; ECF No. 6 – Amended Petition at 5-16.)

In supplements to his initial habeas petition, Petitioner generally argues that there was a "cumulative violation of [his] basic rights," (ECF No. 5), and that he was "forced" to go to trial because the plea offer of life without parole was excessive. (ECF No. 9.)

The State contends that Petitioner's claims for habeas relief should be denied for lack substantive merit, or because they do not state a claim of a constitutional violation necessary to provide a basis for grant of federal habeas relief. (ECF No. 15-2 - Respondents' Answer.)

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court has jurisdiction to entertain a petition for federal habeas relief as follows:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

As to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S. Ct. 2148, 2151 (2012).

"Clearly established Federal law" is determined as of the date of the relevant state court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). A state-court decision is "contrary to" clearly established federal law if the state court (1) contradicts the governing law set forth in Supreme Court cases or (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Jamison v. Klem*, 544 F.3d 266, 274 (3d Cir. 2008). The state court judgment must contradict clearly established decisions of the Supreme Court, not merely law articulated by any federal court, *Williams*, 529 U.S. at 405, although district and appellate federal court decisions evaluating Supreme Court precedent may amplify such precedent, *Hardcastle v. Horn*, 368 F.3d 246, 256 n. 3 (3d Cir. 2004) (citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999)). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." *Parker*, 132 S. Ct. at 2155. The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274–75. Few state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision involves an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court

precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. A showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. *See Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (stating that under § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." (quoting *Williams* at 410)); *see also Metrish v. Lancaster*, 133 S. Ct. 1781, 1786–87 (2013); *Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S. Ct. at 786–87. *See also Metrish*, 133 S. Ct. at 1787.

Federal courts must follow a highly deferential standard when evaluating, and thus give the benefit of the doubt to, state court decisions. *See Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011); *Pinholster*, 131 S. Ct. at 1398; *Eley v. Erickson*, 712 F.3d 837, 845 (3d Cir. 2013). *See also Harrington*, 131 S. Ct. at 786 (stating habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *Renico v. Lett*, 559 U.S. 766, 773 (2010) ("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)

("question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold"); *Lockyer*, 538 U.S. at 75 (stating it is not enough that a federal habeas court, in its independent review of legal question, is left with firm conviction that the state court erred). This standard applies even where "the state court analyzed and rejected a habeas petitioner's federal claims on the merits but gave 'no indication of how it reached its decision.'" *Grant v. Lockett*, 709 F.3d 224, 230 (3d Cir. 2013) (quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of rebutting presumption by clear and convincing evidence); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)(factual determinations of state trial and appellate courts are presumed to be correct). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

Even if the petitioner is entitled to habeas relief, the court will grant the writ only if the error was not harmless. Under the harmless error standard, "a court must assess the prejudicial

impact of [the] constitutional error in [the] state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). A court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted); *Eley v. Erickson*, 712 F.3d at 847.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

## IV. DISCUSSION

### A. Identification Issue

In this first claim, Petitioner essentially argues that the trial judge erred in admitting the out-of-court identification of Petitioner made by Ayyildiz (the robbery victim) while Petitioner was at the hospital. Petitioner contends that the out-of-court show-up was impermissibly suggestive and resulted in a substantial likelihood of misidentification. Petitioner raised this claim in his direct appeal, and the Appellate Division rejected Petitioner's arguments, ultimately finding that there was sufficient, credible evidence in the record for Judge Uhrmacher to have reached the determination that the identification was satisfactorily reliable, even if the show-up identification procedure may have been suggestive. *See Washington*, 2008 WL 1733661 at *3-6.

The Supreme Court has observed that improper pretrial identification procedures by police may cause witnesses to misidentify a criminal. *See Simmons v. United States*, 390 U.S. 377, 383 (1968). An identification procedure may be deemed unduly and unnecessarily suggestive if it is based on police procedures that create "a very substantial likelihood of

irreparable misidentification." *Id.* at 384.  In that case, "the witness thereafter is apt to retain in his memory the image of the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Id.* at 383–84. "It is the likelihood of misidentification which violates a defendant's right to due process.... Suggestive confrontations are disapproved because they increase the likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

Nevertheless, even if an identification procedure is unnecessarily suggestive, the Supreme Court has held that admission of the suggestive identification does not violate due process so long as the identification possesses sufficient aspects of reliability. *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977).  Reliability, remarked the Court, is the "linchpin in determining the admissibility of identification testimony." *Id.* at 114; *see also United States v. Wise*, 515 F.3d 207, 215 (3d Cir. 2008).  The central question is "whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." *Brathwaite*, 432 U.S. at 106 (quoting *Biggers*, 409 U.S. at 199); *see also United States v. Maloney*, 513 F.3d 350, 355 (3d Cir. 2008).  Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199.  Significantly, the Supreme Court has ruled that, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process. *See Coleman v. Alabama*, 399 U.S. 1, 7 (1970).

As the Court recently explained,

An identification infected by improper police influence ... is not automatically excluded. Instead, the trial judge must screen the evidence for reliability pretrial. If there is a very substantial likelihood of irreparable misidentification, the judge must disallow presentation of the evidence at trial. But if the indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth.

*Perry v. New Hampshire*, --- U.S. ----, 132 S.Ct. 716, 720–21, 181 L.Ed.2d 694 (2012).

In this case, the trial court conducted a pretrial *Wade* hearing to screen the identification procedure for reliability. On direct appeal, the Appellate Division recounted the testimony elicited at the pretrial *Wade* hearing, as follows:

Ayyildiz testified that the gas station was illuminated by "clear and bright" overhead lights, and that there were lights inside the attendant's booth where he was located. After defendant exited his motor vehicle, he approached the booth and requested a pack of cigarettes while standing approximately three feet from Ayyildiz. After Ayyildiz handed defendant a pack of cigarettes, defendant requested a second pack. As Ayyildiz turned his head to retrieve the cigarettes, he felt something pressed against the left side of his stomach, which he later observed as a knife.

Defendant demanded that Ayyildiz give him the money from the cash register in his booth. When Ayyildiz complied, defendant immediately fled the scene. Ayyildiz described the confrontation as lasting approximately two to three minutes, during which he looked directly at defendant's face for most of that time. Although he observed that defendant was wearing something around his head, similar to that of a turban, Ayyildiz could not recall whether defendant had worn eyeglasses or had facial hair at the time of the incident. As to remembering defendant's facial features, Ayyildiz stated: "I can't forget his face. The man that's sitting in front of me today is the same man that robbed me that night."

Shortly after the robbery, Ayyildiz had gone to the police station to formally report the robbery to Habermann; after which Habermann told him "that we're going to go to the hospital, there's somebody there that you need to look at...." On arrival at the hospital, Ayyildiz observed defendant lying on a bed in a small room, wearing the same clothes that he had worn at the time of the robbery, not hospital clothes. On viewing defendant, Ayyildiz informed Habermann that he "was 100 percent sure that [defendant] was the person that [he] saw at the gas station." At the conclusion of his testimony, Ayyildiz again identified defendant as the individual who had robbed him.

Habermann testified as follows. He testified that he responded to the West Long Branch Police Station at approximately 3:38 a.m., where he met Ayyildiz and the gas station manager. Ayyildiz reported the incident, informing Habermann that he had been robbed

by a black man. After approximately ten to fifteen minutes, Habermann was informed that the Long Branch Police had someone in custody at the hospital emergency room, and "that the person in the emergency room had been pulled from the ocean in the area where the car that was involved in the gas station robbery had crashed."

On learning this information, Habermann requested that Ayyildiz accompany him to the hospital, telling him that "there was somebody at the [e]mergency [r]oom, I didn't know how they were involved, if they were involved at all with the case. However, I just wanted him to come with me so that he could take a look at that person." Habermann told Ayyildiz that "the person you are about to view may or may not be involved in your case."

When Habermann and Ayyildiz arrived at the hospital at 3:55 a.m., they proceeded to a small security room adjacent to the emergency room. Defendant was in the security room by himself, lying on a bed facing the doorway. Unlike Ayyildiz, Habermann testified that defendant was dressed in a hospital gown, not his street clothes. Although Habermann would have been surprised if the defendant was not handcuffed, he did not recall seeing any handcuffs. Before permitting Ayyildiz to view defendant, Habermann again instructed him that:

> the person he's going to see may not have anything to do with the case or may have something to do with the case. I have no idea who this person is. I said to [Ayyildiz] just look at him; and if you've seen him before, tell me if you have. If you haven't seen him before, tell me you haven't seen him.

The door to the security room contained a small window. Ayyildiz first looked through the window at defendant. However, because Habermann wanted Ayyildiz to have an unobstructed view, Habermann opened the door slightly, and Ayyildiz stood in the doorway where he looked at defendant lying on the bed. After Ayyildiz viewed defendant, he informed Habermann that he was 100% sure that defendant was the individual who had robbed him. On leaving the hospital, Habermann took Ayyildiz to the accident site, where Ayyildiz identified the car involved in the accident as the one driven by defendant at the time of the robbery.

*Washington*, 2008 WL 1733661 at *4-5.

At the conclusion of the *Wade* hearing, Judge Uhrmacher ruled the identification admissible, finding that the identification was reliable based on the totality of the circumstances. The Appellate Division agreed, specifically noting, as did Judge Uhrmacher, "that Ayyildiz had observed defendant for two or three minutes, at an illuminated gas station, with defendant standing three feet away from Ayyildiz, providing Ayyildiz with ample opportunity to view the

defendant; Ayyildiz had looked at defendant's face during that time, giving defendant his undivided attention; Ayyildiz had expressed 100% certainty at the time he had identified defendant at the hospital; and that the time between the crime and the show-up identification had only been an hour and one half." *Id.* at *6.

The Appellate Division initially commented that Judge Uhrmacher's findings in the *Wade* hearing should not be disturbed if there was "sufficient credible evidence in the record" to support the findings that the identification procedures were reliable. *Washington*, 2008 WL 1733661 at *3. The court then discussed the federal precedent set down in *Simmons, supra*, which held that the court must look to whether the identification procedure was "'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Simmons*, 390 U.S. at 384. The Appellate Division also observed that any consideration as to the suggestiveness and reliability of an identification had to be evaluated upon the totality of the circumstances surrounding the confrontation. *Washington*, 2008 WL 1733661 at *3 (citation omitted).

The Appellate Division further considered the reliability factors set forth in *Manson v. Brathwaite, supra*, in determining the reliability of the identification at issue. *Washington*, 2008 WL 1733661 at *4. While the Appellate Division acknowledged the inherent suggestiveness of one-on-one show-ups because "the victim can only choose from one person, and, generally, that person is in police custody," the court also remarked that "standing alone[,] a showup is not so impermissibly suggestive to warrant proceeding to the second step." *Id.* Nevertheless, the court acknowledged that "only a little more is required in a showup to tip the scale toward impermissibly suggestive," such as added comments by police. *Id.* (citation omitted).

Nevertheless, the Appellate Division remarked that it did not deem the show-up procedure as impermissibly suggestive, even with the statements made by Habermann to Ayyildiz, both at the police station and at the hospital before Ayyildiz viewed defendant in the security room, because "the identification was not imposed on Ayyildiz, leading to a substantial likelihood of irreparable misidentification, but rather that the identification was that of Ayyildiz." *Washington*, 2008 WL 1733661 at *6. Ultimately, the Appellate Division held that there was sufficient, credible evidence in the record for Judge Uhrmacher to have reached the determination that the identification was reliable. The court emphasized that "the area where the robbery occurred was well-lit; Ayyildiz had the opportunity for two or three minutes to observe the face of defendant who was, at most, only three feet away from him during the robbery, which demonstrates a level of certainty; and it was an extremely short period of time between the robbery to the time of the identification at the hospital." *Id.*

This Court agrees with the state court rulings that there was sufficient, credible evidence in the record to conclude that the identification of Petitioner was reliable and properly admitted at trial. The trial judge conducted a thorough hearing and concluded, based on the testimony of the victim and consideration of the totality of the circumstances, that there was not a substantial likelihood of irreparable misidentification. Therefore, under these circumstances, the state courts' adjudication of Petitioner's identification claim was not contrary to, or an unreasonable application of applicable Supreme Court jurisprudence and Petitioner is not entitled to habeas relief on this claim.

## B. Ineffective Assistance of Counsel Claims

Petitioner raises various claims of ineffective assistance of counsel in Grounds Three, Four, Six and Seven of his habeas petition. To prevail on a claim of ineffective assistance of

counsel in a § 2254 case, Petitioner must show that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed under the Sixth Amendment of the Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014) (holding that, in an ineffective assistance of counsel claim, petitioner must prove (1) that his trial counsel's performance was so deficient in that it fell below an objective standard of reasonableness, and (2) prejudice by showing a reasonable probability that, but for counsel's deficient performance, the outcome at trial would have been different) (citing *Strickland, supra*). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Ross v. Varano*, 712 F.3d 784, 797–98 (3d Cir. 2013).

"Since Strickland, the Supreme Court and [the Third Circuit] have emphasized the necessity of assessing an ineffectiveness claim in light of all the circumstances." *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009) (citing cases). When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Grant*, 709 F.3d at 232. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. *See id.* "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must

"take a highly deferential look at counsel's performance" under *Strickland*, "through the deferential lens of § 2254(d)." *Id.* (internal quotations and citations omitted). As the Third Circuit recently stated, "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *U.S. v. Travillion*, 759 F.3d 281, 289 (3d Cir. 2014) (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982)). On habeas review, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Travillion*, *supra* (quoting *Strickland*, 466 U.S. at 689, and *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996)). The Third Circuit recently observed that *Strickland*'s test is demanding as there is a "strong" presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Branch v. Sweeney*, 758 F.3d 226, 234 (3d Cir. 2014) (quoting *Burt v. Titlow*, --- U.S. ----, ----,134 S.Ct. 10, 17 (2013)). Thus, Petitioner faces a stringent requirement to show that, given all the circumstances of the case, "counsel's mistake was so egregious that it fell 'outside the wide range of professionally competent assistance.'" *Branch*, 758 F.3d at 235 (quoting *Strickland*, 466 U.S. at 690). Moreover, the court must assess the reasonableness of counsel's performance at the time of trial and not with the benefit of hindsight. *Id.*

1. *Failure to Introduce Photograph of "Rasheem" to Show Similarities to Jury*

In Ground Three, Petitioner complains that his trial counsel was ineffective because he did not introduce into evidence at trial a photograph of Dwayne C. Hoover, known to Petitioner as "Rasheem," to show the jury the physical similarities between Rasheem and Petitioner. Petitioner had testified at trial that Rasheem had borrowed Petitioner's car, and it was Rasheem who committed the robbery. Petitioner argued that the robbery victim's identification of

Petitioner was mistaken because Petitioner and Rasheem possess similar physical features. Petitioner raised this claim in his state PCR proceedings.

At the August 28, 2009 PCR hearing, Judge Reisner rejected Petitioner's claim of ineffectiveness on this issue, finding the claim to be "merely speculative." Specifically, Judge Reisner remarked:

> It's not clear that this particular photograph would have been persuasive to the jury. The jury could have also found there were significant differences, and so the jury may have looked at the photograph and equally logically reached the determination that there were not enough appearances – similarities in their appearances so that there was no certainty as to what effect that photograph would have on the jury.

> Under those circumstances the trial counsel's determination not to submit the photograph does not meet the *Strickland* test for ineffective assistance of counsel.

(ECF No. 15-17; Ra14 - Aug. 28, 2009 PCR Transcript at 24:12-25.)

On direct appeal, the Appellate Division applied *Strickland*'s deferential standard and affirmed the PCR court's ruling. The court found that:

> ... introducing the photograph would have been a risky strategy. The mugshot photographs of defendant and Rasheem contained in defendant's appendix are photocopies, and likely are not as vivid a depiction of each man's appearance as the original photographs would have been. Nonetheless, it is evident that although there is some resemblance between the two men, the similarity is far from overwhelming. Moreover, defendant conceded during his trial testimony that Rasheem is "bigger than me[,] ... somewhere around six one." Defendant stated that he himself was only 5'7" tall. Thus, in light of the height difference and the fact that the photographs of the two men reveal only a general resemblance, rather than a striking similarity, trial counsel's decision not to present the photograph of Rasheem as evidence at trial strikes us as a reasonable and sound trial strategy, and not the substandard representation that defendant claims.

> Moreover, trial counsel demonstrated to the jury through defendant's testimony the similar appearances of defendant and Rasheem, and he attacked the identification of defendant by Ayyildiz through cross-examination. [footnote omitted] Through this trial strategy, trial counsel adequately presented the misidentification defense to the jury. Such strategy, which included not proffering the photograph of Rasheem, does not constitute ineffective assistance, because it is highly unlikely that the photograph would have substantiated defendant's claim that it was Rasheem, not he, who had robbed Ayyildiz.

As Judge Reisner reasoned, rather than substantiating defendant's testimony, the jury could also have used the photograph to find that Rasheem did not bear a strong resemblance to defendant, thus calling into question, as the State argues, "all of defendant's testimony and negating the misidentification defense."  As we have noted, merely because the strategy of not introducing the photo might have been an unsuccessful strategy does not mean that counsel's performance was ineffective.  [citation omitted]

*State v. Washington*, 2011 WL 1543348, at 5-6 (N.J. Super. A.D. Apr. 26, 2011).  The appellate

court also concluded that even if trial counsel was deficient in not proffering the photograph, any

such failure did not prejudice defendant.  Thus, the second *Strickland* prong was not satisfied.

The Appellate Division specifically observed: "In particular, in light of the six-inch difference in

the height of the two men, and the lack of a strong resemblance in the photographs, we deem it

highly unlikely that the jury would have accepted the misidentification defense even if the

photograph had been presented." *Id.* at *6.

This Court likewise finds that Petitioner has not established deficient performance by trial

counsel, as required under *Strickland*.  The facts and circumstances as reiterated above plainly

show that trial counsel's decision was a strategic one that should not be challenged in hindsight.

Furthermore, the state courts correctly determined that the proffer of Rasheem's photograph was

unlikely to change the outcome of trial as there was a significant difference in the height of

Petitioner and Rasheem, and any resemblance between the two men was not so compelling as to

sway the jury to accept Petitioner's misidentification defense.  Therefore, this Court is satisfied

that the state courts correctly identified and applied the controlling Supreme Court precedent in

*Strickland*, and this claim is denied as substantively meritless.  *See Parker*, 132 S.Ct. at 2151

(finding when state court has adjudicated petitioner's federal claim on merits, district court "has

no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary

to, or involved an unreasonable application of, clearly established Federal Law, as determined by

the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding'" (quoting 28 U.S.C. § 2254(d)).

 2. *Failure to Fully Investigate Evidence of the Car.*

 Next, Petitioner argues that trial counsel was ineffective because he failed to investigate the evidence from the scene related to the car, which could have uncovered that the driver of the car was someone other than Petitioner. Namely, Petitioner contends that Rasheem's fingerprints could have been found in the car if it had been investigated. Instead, counsel did not examine the car and did nothing to prevent the State from returning the car to the dealership. Again, Petitioner raised this claim in his PCR proceeding, and the PCR court rejected the claim for lack of merit.

 Specifically, the PCR court found that even if the fingerprints had been found in Petitioner's car, there would be no way to confirm when the fingerprints were placed there. Indeed, Petitioner "admitted during his testimony that Rasheem was a friend and therefore the fact that Rasheem at some point during the course of their friendship was in the car, the fingerprints would not support necessarily an inference that the defendant would be acquitted of this crime had those fingerprints been found." (ECF No. 15-17; Ra14 – Aug. 28, 2009 PCR Transcript at 25:5-14.)

 The PCR court further observed that an investigation of the car might not have revealed any fingerprints belonging to Rasheem in the car, thus undermining Petitioner's credibility for the jury and Petitioner's defense that he was not the driver. (*Id.* at 25:15-21.) Moreover, Judge Reisner noted that it was trial counsel's strategy to portray the police as having hastily decided without diligent investigation that Petitioner was the perpetrator of the robbery, and the failure of

the police to present fingerprint evidence supported that defense, thus creating reasonable doubt for the jury that Petitioner was the actual culprit because no fingerprint evidence was produced by the police to conclusively prove Petitioner was the perpetrator of the crime. (*Id.* at 25:22-26:8.)   Accordingly, Judge Reisner concluded that the value of any evidence of Rasheem's fingerprints in the car was merely speculative, and trial counsel's representation did not fall below an objective standard of reasonableness. (*Id.* at 26: 9-19.)

      The Appellate Division affirmed the PCR court's decision on this claim, stating:

> ... that because defendant and Rasheem were friends, even if Rasheem's fingerprints had been found in defendant's car, such a finding would have been of little help to defendant because the fingerprints could have been from an earlier occasion when Rasheem was riding in the car. Thus, because the outcome of the fingerprint analysis, even if favorable, would have been of limited benefit to defendant at trial, we cannot fault trial counsel for failing to pursue that issue, and conclude that the failure to obtain a fingerprint analysis of the car does not constitute ineffective assistance of counsel. *State v. Martini*, 160 N.J. 248, 266 (1999) (holding that counsel's decision to limit an investigation will not be deemed deficient when it "is supported by 'reasonable professional judgments' "), *cert. denied*, 543 U.S. 805, 125 S.Ct. 237, 160 L. Ed.2d 5 (2004).

*Washington*, *supra*, 2011 WL 1543348 at *4.

      This Court finds that Petitioner is not entitled to habeas relief on this ineffective assistance of counsel claim because he has not shown that the New Jersey courts' rejection of those claims was based on an unreasonable determination of the facts in light of the evidence presented, or that it was contrary to, or an unreasonable application of *Strickland* and its progeny. Petitioner has not shown that an investigation of the car would have yielded Rasheem's fingerprints, and it is too speculative to assume that even if Rasheem's fingerprints were found in the car that such evidence would inure to Petitioner's benefit given the fact that Rasheem was a friend and his fingerprints could have been left there anytime.   Further, to have pushed for an investigation of the car for fingerprints would have undermined defense counsel's feasible strategy of showing that the police hurried to judgment without an adequate investigation.

22

Accordingly, where Petitioner cannot demonstrate either deficient performance or prejudice, this claim is denied for lack of merit.

    3.  *Failure to Make Reasonable Investigations.*

    Next, in Ground Seven of his petition, Petitioner argues that his trial counsel failed to make reasonable investigations, namely, that counsel failed to render proper advice about participating in a pretrial line-up.[4]  (ECF No. 1 – Petition at 15.) On the PCR appeal, the Appellate Division declined to address Petitioner's claim because Petitioner did not raise it before the Law Division.  In fact, the Appellate Division noted that Petitioner had filed a pretrial motion to compel the State to conduct a line-up, but the request was withdrawn.  *Washington,* 2011 WL 1543348 at *6.

    It is apparent from the Appellate Division's ruling that this claim was denied by the state courts because Petitioner failed to raise it in accordance with state procedural rules.  Thus, the state court's ruling appears to be based upon "an independent and adequate state ground"— independent, that is, of any federal constitutional infirmity.  *Trevino v. Thaler,* --- U.S. ----, 133 S.Ct. 1911, 1917, 185 L.Ed.2d 1044 (2013) (citing *Coleman v. Thompson,* 501 U.S. 722, 729–30 (1991)).  "The procedural default doctrine precludes a federal habeas court from 'review[ing] a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Holland v. Horn,* 519 F.3d 107, 112 (3d Cir. 2008) (quoting *Bronshtein v. Horn,* 404 F.3d 700, 707 (3d Cir. 2005) (quoting *Coleman,* 501 U.S. at 729)).  Consequently, "absent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state

---

[4] Petitioner also reiterates his previous claim that trial counsel did not investigate the car for fingerprints.  This claim was discussed and rejected by this Court in the above section of this Opinion.

procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Walker v. Martin*, 562 U.S. 307, 131 S.Ct. 1120, 1127, 179 L.Ed.2d 62 (2011) (citations and internal quotation marks omitted); *see also Holland*, 519 F.3d at 112.

Here, Petitioner makes no arguments to show cause or prejudice necessary to excuse his procedural default on this habeas claim. Accordingly, this claim is denied as procedurally defaulted.

4. *Failure to Argue that Verdict Was Against the Weight of Evidence*.

Petitioner also claims that his appellate counsel was ineffective because he failed to raise on appeal that the verdict was against the weight of evidence. On PCR review, Judge Reisner rejected Petitioner's claim, finding that even if appellate counsel had argued on appeal that the trial judge erred in denying the motion for a new trial, such claim would not have been successful given the strength of the State's case against Petitioner.

The Appellate Division likewise rejected Petitioner's claim on his PCR appeal, commenting that Petitioner presented the court with no reason, "much less a meritorious reason, to conclude that a claim concerning the denial of the new trial motion would have been successful on appeal." *Washington*, 2011 WL 1543348 at *7. The court further stated that the issues raised by Petitioner in this claim "went to the weight not the admissibility of evidence and the credibility issues were obviously resolved by the jury in favor of the State." *Id.*

A claim that the verdict is against the weight of the evidence is essentially a matter of state law, and does not raise a federal constitutional question unless the record is completely devoid of evidentiary support of the inmate's guilt. *See Wallace v. Glover*, Civil No. 09-4494, 2013 WL 1352250, at *10 (D.N.J. Apr. 2, 2013) (quoting *Cunningham v. Maroney*, 397 F.2d 724, 725 (3d Cir. 1968), *cert. denied*, 393 U.S. 1045 (1969)). Only where no rational trier of fact

could have found proof of guilt beyond a reasonable doubt should a writ be issued.  *See Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  Moreover, factual issues determined by a state court (jurors included) are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  *See Werts v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (citing 28 U.S.C. § 2254(e)(1)).

In essence, Petitioner is arguing that there was insufficient evidence to convict, and that his appellate counsel should have raised that issue on appeal.  Petitioner's sufficiency of the evidence claim is governed by the controlling Supreme Court precedent in *Jackson v. Virginia*, *supra*.  "[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2254–if the settled procedural prerequisites for such a claim have otherwise been satisfied-the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson,* 443 U.S. at 324; *accord McDaniel v. Brown*, 558 U.S. 120, 121 (2010) (per curiam).  *Jackson* "requires a reviewing court to review the evidence in the light most favorable to the prosecution. Expressed more fully, this means a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  *McDaniel*, 558 U.S. at 133 (quoting *Jackson*, 443 U.S. at 326); *see also House v. Bell*, 547 U.S. 518, 538 (2006) ("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict").  The Court emphasized that "the standard ... does not permit a court to make its own subjective determination of guilt or innocence."  *Jackson*, 443 U.S. at 320, n. 13.

Moreover, "a reviewing court must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously." *McDaniel*, 558 U.S. at 131 (citation and internal quotation marks omitted).  Further, "under Jackson, the assessment of credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The question is "whether, viewing the evidence in the light most favorable to the state, it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty[.]" *Kamienski v. Hendricks*, 332 F. App'x 740, 747  (3d Cir. 2009).

As the Third Circuit recently has pronounced, a trial court's verdict will be overturned "only when the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." *Government of Virgin Islands v. Vanterpool*, 767 F.3d 157, 169 (3d Cir. 2014) (quoting *United States v. Miller*, 527 F.3d 54, 62 (3d Cir.2008) (quoting *United States v. Thayer*, 201 F.3d 214, 218–19 (3d Cir.1999))).

This Court finds that the New Jersey court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of *McDaniel* and *Jackson*.  Indeed, the state courts remarked that even if counsel had raised an insufficiency of evidence argument on appeal, it obviously would have failed for lack of validity.  Consequently, Petitioner cannot satisfy either prong under *Strickland*, and this ineffective assistance of appellate counsel claim is denied for lack of merit.

C.  Inadequate and Misleading Jury Instructions

Petitioner next asserts that the trial court's jury instructions were inadequate and misleading because the court failed to properly instruct the jury on how to analyze and consider issues of identification and how to evaluate police testimony.  Petitioner also claims that the trial

court failed to mold the jury instructions to the facts of the case and include an instruction on cross-racial identification.  (ECF No. 1, Pet. at Ground Five.)  He raised these claims on direct appeal.  The Appellate Division rejected Petitioner's claims, finding:

> In reviewing the charge as a whole, we find no error, much less plain error.  The trial court provided the jury with the Model Criminal Jury Charge: "Identification: In-Court and Out-of-Court Identifications," including the provisions governing the burden of proof and cross-racial identification.  Concerning the instructions on evaluating the testimony of police officers, the trial court instructed the jury, generally, on how to evaluate all witnesses who testified in the matter, including police officers.

Washington, 2008 WL 1733661 at *10.

Habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights.  *Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991) (holding that "[t]he only question for us is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process")).  *See also Middleton v. McNeil*, 541 U.S. 433, 437 (2004).  A defendant's due process rights are violated only where the instruction "operated to lift the burden of proof on an essential element of an offense as defined by state law."  *Echols*, 492 F. App'x at 312 (quoting *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997)).

Similarly, where a jury instruction operates to "remove from the jury's consideration a necessary element of the prosecutor's case", the Sixth Amendment right to trial by jury is implicated.  *See, e.g., Gonzalez v. Wolfe*, 290 F. App'x 799, 811–12 (6th Cir. 2008).

An actual constitutional error is generally subject to "harmless error" analysis.  *Smith*, 120 F.3d at 416–17.  "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless."  *Id.* at 418.

However, jury instructions should "not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle v. McGuire*, 502 U.S. at 72–73 (quotations, citations, and footnote omitted).  *See also Middleton*, 541 U.S. at 437 (quotations and citations omitted).  Further, "[e]ven if there is some ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation.  Rather, the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (quotations and citations omitted).

In this case, as discussed above, the Appellate Division observed on direct appeal that the trial court had provided the jury with model jury instructions on identification issues, including in-court and out-of-court identifications, burden of proof, and cross-racial identification.  The trial court also gave general instructions to the jury as to how to evaluate testifying witnesses, including police officers.  *Washington*, 2008 WL 1733661 at * 10.  Indeed, this Court has carefully examined the jury charges as a whole and also concludes that the absence of tailored instructions, as generally alleged by Petitioner, did not in any way corrupt the trial or violate Petitioner's right to due process.  Consequently, taken as a whole, the instructions adequately conveyed to the jurors the law to be applied and did not constitute reversible error.  *See Waddington*, 555 U.S. at 190–91.  Petitioner fails to show that the jury charge as a whole, or the lack of tailored instructions, constituted a fundamental due process defect that would give rise to habeas relief.  Nor does Petitioner point to any Supreme Court holding that would be violated by

the failure of either the trial court to deliver, or trial counsel to request, "more specific" jury instructions than that provided by the trial court. Petitioner also fails to show that there was a reasonable likelihood that the jury applied the instructions in a way that relieved the prosecution of the burden of proving the requisite elements of the crimes for which he was charged.

In sum, the jury instructions were clear and informative, and did not operate in any way to lift the burden of proof from the State. Thus, this Court agrees with the state court that this claim lacks merit. The Court concludes that Petitioner has not shown that the state adjudication of these claims was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, Petitioner is not entitled to habeas relief on this ground of the petition.

D. Failure to Admit Evidence of Third Party Guilt

In Ground Two of his habeas petition, Petitioner asserts that the trial court erred in denying the request of defense counsel to admit evidence of a similar robbery committed on September 29, 2002, while the Petitioner was in jail, so as to support the defense theory that Rasheem committed both the September 29, 2002 robbery and the August 10, 2002 robbery for which Petitioner was charged. Specifically, the defense intended to show that the two robberies were sufficiently similar and that the physical description of the passenger in the car used in the second robbery matched the physical description of Rasheem. This issue was raised on direct appeal, and the Appellate Division found no merit to the claim. *Washington*, 2008 WL 1733661 at *7-8. The Appellate Division recounted the findings and conclusion of the trial court judge who denied the defense motion to admit evidence of the September 29, 2002 robbery, as follows:

> Despite defendant's argument, the robberies are dissimilar enough that the evidence is not sufficiently probative to permit admittance. The August 10, 2002 robbery was conducted by one black male, while the September 29, 2002 robbery was committed by two black males.

During the first robbery, defendant did not take any money from the victim's person, while the two men who committed the second robbery frisked the station attendant and made him turn over the money in his pockets. The defendant allegedly used a serrated kitchen knife, but the perpetrators of the second robbery used what was described to be [a] hunting knife.

Furthermore, different vehicles were used and while defendant tore out of the station with screeching tires, the perpetrators of the second robbery calmly walked to their car and casually drove away.

Finally, the station attendant positively identified defendant, who is a forty-six[-]year[-]old black male as the perpetrator of the August 10 robbery while the same attendant estimated the two perpetrators from the September 29 robbery to be in their twenties and thirties. Therefore, there were numerous dissimilarities between the two robberies without anything unique that would connect the two crimes.

[T]he exclusion of the reverse 404(b) evidence does not prevent defendant from arguing at trial that Rasheem rather than he committed the August 10, 2002 robbery; rather, [i]t simply prevents the admittance of evidence that lacks probative value and would be confusing and misleading to a jury and result in a waste of time.

Considering that the similarity between the two robberies is tenuous and that there is no indication that Rasheem had any connection to the second robbery, admitting evidence of the September 29, 2002 robbery simply would do nothing to prove or disprove defendant's claim that Rasheem committed the August 10, 2002 robbery. Therefore, the defendant's motion to admit reverse N.J.R.E. 404(b) evidence should be denied....

*Washington*, 2008 WL 1733661 at *7-8.

The Appellate Division reviewed the issue pursuant to the New Jersey Rules of Evidence and state law, and determined that "Judge Mellaci correctly exercised his discretion in denying admission of the other-crimes evidence." *Id.* at *8.

The question of the admission of evidence is essentially a state law evidence claim and "the Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). However, in *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court reversed the conviction of Chambers for murdering a police officer on the ground that "the cumulative

effect"[5] of several evidentiary rulings denied due process under the Fourteenth Amendment because they "frustrat[ed] his efforts to develop an exculpatory defense" that another person—Gable McDonald—had shot and killed the police officer. *Id.* at 290 n. 3. Specifically, the trial court denied Chambers' request to cross-examine McDonald as an adverse or hostile witness and sustained the state's hearsay objection to the admission of the testimony of three witnesses who would have testified that McDonald had confessed, on three separate occasions shortly after the crime, to shooting the police officer. The Supreme Court held that "the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." *Id.* at 302–03. However, the Court emphasized that, "in reaching this judgment, we establish no new principles of constitutional law .... Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Id.*

Subsequent Supreme Court cases have interpreted *Chambers* narrowly. For instance, in *United States v. Scheffer*, 523 U.S. 303, 308 (1998), citing *Chambers*, the Supreme Court observed that "we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." In *Scheffer*, the Court rejected defendant's claim that a *per se* rule against the admission of polygraph evidence in a court martial violated the Fifth or Sixth Amendment rights of the accused to present a defense. *Id.* at 316-17. Similarly, in *Montana v. Egelhoff*, 518 U.S. 37, 53 (1996), the Court held that due process does not prevent a state from disallowing consideration of voluntary intoxication when a defendant's state of mind is at issue, and observed that "the holding of *Chambers*—if one can be discerned from such a fact-intensive case—is certainly not that a

---

[5] In a later supplement to his habeas petition, Petitioner generally alleges that there was a "cumulative violation of [his] rights." (ECF No. 5.)

defendant is denied 'a fair opportunity to defend against the State's accusations' whenever 'critical evidence' favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to the level of a due process violation." *Id.* at 53.

In fact, the Supreme Court has held that "'state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials.'" *Homes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Scheffer*, 523 U.S. at 308; also citing *Crane v. Kentucky*, 476 U.S. 683, 689–690 (1986); *Marshall v. Lonberger*, 459 U.S. at 438, n. 6; *Chambers*, 410 U.S. at 302–303; and *Spencer v. Texas*, 385 U.S. 554, 564 (1967)). The *Homes* Court remarked:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.... Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive ..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"

*Homes*, 547 U.S. at 324–25 (citations omitted).

Violations of the right to present a defense are subject to harmless error review. *See, e.g., Crane v. Kentucky*, 476 U.S. 683 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673, 680–84 (1986); *Savage v. District Attorney of the County of Philadelphia*, 116 F. App'x 332 (3d Cir. 2004) (unpubl.). "The Sixth Amendment requires more than a mere showing by the accused that some relevant evidence was excluded from his trial. Rather, the accused must show how that testimony would have been both material and favorable to his defense.... [E]vidence is material: "only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Government of the Virgin Islands v. Mills*, 956 F.2d 443, 445–46 (3d Cir. 1992) (citations omitted). The Third Circuit noted that there is little, if any, difference in the

analysis of such a claim under the Sixth Amendment or under the Due Process Clause. *Mills*, 956 F.2d at 445 n. 4, cited in *U.S. v. Bianchi*, 386 F. App'x 156, 159 n. 5 (3d Cir. 2010), *cert. denied*, --- U.S. ----, 131 S.Ct. 1044, 178 L.Ed.2d 864 (2011).

Thus, to establish a constitutional violation under *Chambers*, "a defendant must show: (1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose". *United States v. Flemming*, 223 F. App'x 117, 126 n. 5 (3d Cir. 2007) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Here, the Appellate Division found no error or abuse of discretion in the trial court's exclusion of evidence regarding the second robbery. This Court agrees that the decision to exclude the evidence was not arbitrary, but was rationally based upon the notable and numerous distinctions between the two robberies. Moreover, this Court agrees that the excluded evidence was not material because the purported similarities between the two robberies was tenuous at best and incapable of proving or disproving Petitioner's claim that Rasheem committed the first robbery for which Petitioner was being tried. Indeed, the state court properly found that the evidence was precluded by N.J.R.E. 404(b) because it was lacking in any real probative value and was likely to be confusing and misleading to the jury. *Washington*, 2008 WL 1733661 at *8. Thus, because this Court concludes that Petitioner has not shown that the state adjudication of these claims was contrary to, or an unreasonable application of, Supreme Court precedent, Petitioner is not entitled to relief with respect to this claim, and the claim is denied accordingly.

E. <u>Sentencing Claims</u>

Petitioner further alleges that his sentence was manifestly excessive, and that the imposition of an extended term sentence was illegal and unjustly harsh. On February 9, 2005, Judge Uhrmacher granted the State's motion for a mandatory extended term subject to the No Early Release Act ("NERA"), and imposed an aggregate term of 50 years in prison pursuant to N.J.S.A. 2C:43-7.1b. Petitioner admits that he had a prior criminal record with more than two prior convictions for robbery, but otherwise, there was nothing about the current robbery that would warrant a 50-year term, especially when the consequences of NERA are considered. Petitioner acknowledges that "the range for an extended first degree sentence is between twenty years in prison and a life term," see N.J.S.A. 2C:43-7a(2), and that his sentence of 50 years imprisonment is mid-range, but argues that 50 years is essentially a life sentence at his age. (ECF No. 1 – Pet. at 16.) He also alleges that the sentence was overly harsh because Judge Uhrmacher found only the need to deter and risk of future offenses as aggravating factors. (*Id.*)

This claim was raised on direct appeal. The Appellate Division held that "the sentence was not manifestly excessive, nor unduly punitive, and does not constitute an abuse of discretion." *Washington*, 2008 WL 1733661 at*8. The court also concluded that Judge Uhrmacher had "properly determined the aggravating and mitigating factors in imposing the extended-term sentence." *Id.* at *9. Specifically, the court noted that Petitioner's extensive criminal history that included "repetitive" robbery convictions supported a finding of aggravating factors 3 (risk that defendant will commit another offense), 6 (criminal history and seriousness of prior convictions), and 9 (the need for deterrence). *Id.* The Appellate Division also found that there was no basis to find any mitigating factors as Petitioner's drug dependency and need for drug rehabilitation are not mitigating factors, and the hardship to family factor was

not supported by the record.  In fact, the court noted that Petitioner's children were emancipated and there was no evidence that Petitioner had provided any financial assistance to his wife, having been incarcerated most of the time between 1982 and January 2001.  *Id.*

Absent a claim that a sentence constitutes cruel and unusual punishment prohibited by the Eighth Amendment, or that it is arbitrary or otherwise in violation of due process, the legality and length of a sentence are questions of state law over which this Court has no jurisdiction under § 2254.  *See Chapman v. United States*, 500 U.S. 453, 465 (1991) (holding that under federal law, "the court may impose ... whatever punishment is authorized by statute for [an] offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment"). *See also Anderson v. Administrator Northern State Prison*, Civil No. 09-1168, 2014 WL 6675905, *12 (D.N.J. Nov. 24, 2014).

Here, Petitioner appears to argue that his 50-year sentence was excessive because it is unconstitutionally disproportionate to his crime of first degree armed robbery.  However, NERA expressly applies to armed robbery convictions, *see* N.J.S.A. 2C:43–7.2(d)(9), and Petitioner has not pointed to any constitutional violation occasioned by this state law.   To the extent he suggests that an extended term with limited opportunity for parole constitutes an Eighth Amendment violation for cruel and unusual punishment, courts consistently reject that argument. *See, e.g., United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. This is so because we accord substantial deference to [the legislature], as it possesses broad authority to determine the types and limits of punishments for crimes.") (citations omitted); *United States v. Walker*, 473 F.3d 71, 83 (3d Cir. 2007) (holding that 55–year

mandatory sentence for armed robbery did not violate Eighth Amendment); *State v. Johnson*, 166 N.J. 523, 766 A.2d 1126, 1140–41 (2001) (holding that New Jersey's NERA statute does not constitute cruel and unusual punishment).   Moreover, Petitioner provides no argument or evidence to show that an extended 50-year term for first degree armed robbery was disproportionate to other cases.

Finally, Petitioner's argument that the sentencing court abused her discretion by failing to properly consider mitigating factors must be dismissed because it does not raise a federal constitutional question. *See Gentile v. Warren*, Civil No. 11–6125, 2013 W L 85266, at * 15 (D.N.J. Jan.7, 2013) (finding habeas claim that alleges that state court failed to properly consider mitigating factors at sentencing is not cognizable as a federal habeas claim as it relates only to alleged violation of state law).   Accordingly, Petitioner's sentencing challenges fail and he is not entitled to habeas relief on those grounds.

F. Cumulative Error

In a later supplement to his habeas petition, Petitioner generally alleges that there was a "cumulative violation of [his] rights."  (ECF No. 5.)

The test for a "cumulative error" claim is whether the overall deficiencies "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *See Hein v. Sullivan*, 601 F.3d 897, 917 (9th Cir. 2010) (relying on *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005) (relying on *Donnelly*, 416 U.S. at 643); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) ("Cumulative errors are not harmless if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish 'actual prejudice.'").

36

As discussed above, this Court, along with the state courts, finds that there is no merit to Petitioner's claims of individual errors.  As such, there is no basis or merit for habeas relief based upon an alleged accumulation of errors that did not exist.

G.  Plea Offer Claim

Finally, Petitioner recently supplemented his petition to add the claim that he was "forced" to go to trial because the plea offer of life without parole was excessive.  This claim was not exhausted.  However, under 28 U.S.C. § 2254(b)(2), this Court may deny Petitioner's claim on the merits notwithstanding his failure to exhaust state court remedies.  The Court finds that this claim must be denied because Petitioner simply has no constitutional right to a plea bargain.  *See United States v. Osif*, 789 F.2d 1404, 1405 (9th Cir. 1986); *Beebe v. Schultz*, Civil No. 14-1385, 2014 WL 2196767, at *2 fn.6 (D.N.J. May 27, 2014).

## V.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  *See* Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## VI. CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.  Further, Petitioner's Motion to Strike the State's Brief and Appendix (ECF No. 23) is denied.  An appropriate Order follows.


_____
MICHAEL A. SHIPP
United States District Judge

DATED: 2/5/15